C. JERE ALBRIGHT, Plaintiff-Appellant, v. SEYFARTH, FAIR-WEATHER, SHAW & GERALDSON, *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 88—427, 88—485 cons.

Opinion filed November 23, 1988.—Rehearing denied January 6, 1989.

922

Cook Partners Law Offices, Ltd., of Chicago (Rufus Cook and Barbara J. Revak, of counsel), for appellant.

Frank J. Dolan & Associates, of Chicago (Frank J. Dolan and Steven N. Sheely, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff C. Jere Albright appeals from a trial court order dismissing with prejudice a fourth amended complaint alleging legal malpractice and fraud against the law firm of Seyfarth, Fairweather, Shaw &

Geraldson, and John Anderson, an attorney in that firm.

Albright's claims arose out of a lawsuit filed in the Federal District Court for the Central District of California, by Alan Neuman Productions, Inc., against Albright, alleging breach of contract, fraud, conspiracy to commit fraud, RICO violations, and conspiracy to violate RICO. The Neuman complaint alleged that Albright and others used a fraudulent letter of credit scheme to swindle Neuman and other members of the motion picture community out of money. Neuman sought compensatory damages up to $1 million, punitive damages of $10 million, and trebled RICO damages of $277,500. The pleadings in the present case reveal the following.

On December 26, 1983, Albright hired defendants to represent him and told Anderson that he believed an attempt had been made to serve him. Anderson responded that the California docket would be checked periodically for proof of service.

On January 3, 1984, a representative of defendants checked the docket and wrote to Anderson that there was no indication of any activity other than the filing of the complaint and the issuance of summons. The representative wrote:

> "I will have our attorney service check the docket every two weeks or so to see if plaintiff [Neuman] attempts to enter a default. Alternatively, if we wish to avoid the default problem entirely, I could call plaintiff's counsel to confirm that he is not of the view that service can be effected."

On January 9, 1984, Neuman's counsel wrote to Albright advising him that they intended to obtain a default. Albright forwarded the letter to Anderson, who received it prior to the default. Albright instructed Anderson to "immediately contact the opposing counsel in California," and to "take whatever steps are necessary before the California court to avoid the possibility of default." Defendants did not contact Neuman's counsel, nor did they appear before the court in California.

On January 23, 1984, a return of service was filed. It stated that Albright was personally served on December 10, 1983. The process server stated in an affidavit:

> "On December 10, 1983, I again went to the apartment ***. I told him I knew he was Jere Albright from a physical description. He said, Jere Albright? He's out of town! At that point I handed, Mr. Albright, the summons and the complaint and told him this was a summons and complaint and that he was served. Mr. Albright refused to take the package. I told him I could not force him to take the package, but that he was served anyway

and I placed the package on the floor."

On January 30, 1984, a default was entered against Albright in Neuman. Anderson assured Albright that it was routine to vacate such defaults. Anderson prepared, and Albright signed, an affidavit dated February 17, 1984, stating that Albright had never been personally served. On March 27, 1984, defendants filed the affidavit with a motion to quash the return of service and set aside the default.

Subsequently, defendants filed a second affidavit, unsigned by Albright, with the Federal district court. In it, Albright stated that he "was approached by a man who said something about some papers he had for me. I did not recognize the man and I did not accept any papers, nor did he hand me any." Albright was out of the country when this affidavit was prepared and filed.

On April 25, 1984, defendants gave Albright numerous papers to sign, including the second affidavit, which Albright signed "without reading it carefully."

On April 30, 1984, a hearing was held on Albright's motion to quash service and vacate the default in Neuman. Bruce Carroll, an attorney from defendants' California office represented Albright at the hearing. Carroll informed the court: "The very first time I talked with [Albright], I said, 'Look, get rid of this problem. Just accept service and defend on the merits,' and he agreed to that." The district court denied Albright's motion to vacate the default.

The district court then directed Neuman to establish a *prima facie* case and prove its entitlement to damages pursuant to Federal Rule of Civil Procedure 55(b) (Fed. R. Civ. P. 55(b)). The court stated that it would not go beyond the four corners of the complaint. In reference to evidence of an oral modification of the contract, the court said: "The default was entered on a complaint, not on oral modifications that were made. Those were matters that would have been put into controversy at [sic] issue had there been a trial, had there been a proper responsive pleading made. But those are not in issue."

After conducting a hearing on the *prima facie* case, and on damages, on May 28, 1986, the court in Neuman entered a default judgment against Albright in the amount of $692,405.31. Albright subsequently filed the present suit.

■ A motion to strike or dismiss admits all facts well pleaded in the complaint and reasonable inferences which can be drawn from those facts. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) A cause of action should not be dismissed upon the pleadings unless it clearly appears that no set of facts can be proved under pleadings

which would entitle plaintiff to relief. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790; *Kraustrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 420 N.E.2d 429.) No pleading is bad in substance which reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. (Ill. Rev. Stat. 1987, ch. 110, par. 2—612(b).) A motion to dismiss for failure to state a cause of action attacks the legal sufficiency, not the factual sufficiency, of a complaint. *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.

The trial court's reason for dismissing count I pursuant to section 2—615, of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) was that it failed to state a cause of action for legal malpractice.

■ Attorneys are liable to clients for damages when they fail to exercise a reasonable degree of care and skill. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 489 N.E.2d 415; *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 394 N.E.2d 559.) Plaintiff must plead the existence of an attorney-client relationship, a duty arising from that relationship, a breach of that duty, causation, and actual damages. (*Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035.) Plaintiff's burden includes establishing that "but for" the attorney's negligence, the client would have successfully defended or prosecuted the underlying suit. *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035; *Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.

The trial court here found count I contained insufficient allegations "pleading proximate cause in so-called 'but for' rules relating to the service of summons."

■ On the contrary, the complaint alleges duty, breach and proximate cause. It alleges that defendants contracted to furnish

> "all legal services necessary to defend Albright's interests in said lawsuit including the timely filing of a motion to quash service and, if that were unsuccessful, then to timely file an Answer and Counterclaim. Anderson and the Seyfarth law firm agreed to do whatever would be necessary, possible, advisable and customary to properly plead, (including moving to quash the alleged service), and to prevent the entry of a default."

The complaint alleges further that a breach occurred when defendants failed to comply with Federal "Rule 12(h) in that he had a valid defense of lack of personal jurisdiction because he had not been personally served at all." Moreover, defendants negligently advised Albright in December 1983 and January 1984 "that in fact the service was to-

tally invalid regardless of how it was made because the service had not been returned within the statutory time as set forth in the rule verbally read to plaintiff by defendant Anderson on or about December 26, 1983." Albright asked defendants to contact the opposing attorneys, but defendants insisted "that they need not file any pleadings or motions before docket sheet entries showing service to Albright, which was an incorrect statement of the law, and their reliance upon it led to the drastic damage to" Albright.

The complaint alleges further that defendants knew the Neuman attorneys

> "intended to obtain a default because, by a letter dated January 9, 1984, said law firm *** mailed to Albright *** a letter by which Jere Albright learned that the California plaintiff's lawyers *** intended and expected to obtain a default judgment. Albright immediately caused the letter to be forwarded to defendant Anderson, which letter he received prior to the entry of the Default. Plaintiff [Albright] advised defendant Anderson that he should immediately contact the opposing counsel in California and also take whatever steps were necessary before the California court to avoid any possibility of a default. Although Anderson promised that he would do so, and he had a duty to do so, he actually did nothing officially before the Court and failed to contact the California Plaintiff's attorneys to protect said rights of Albright. Albright was not advised of this until after a default was taken in the matter."

The complaint goes on to allege that at the April 30, 1984, California hearing to quash service of summons and vacate the default, an attorney in defendants' firm breached his duty of professional care by "not rebutting the false statement of the Mosk law firm that Albright had lied when he swore in an affidavit that he had never been served. Said proceeding resulted in the Court's denying, five weeks later, the motion to vacate the default."

▰ The complaint then sets forth its proximate cause allegations:

> "20. But for the Seyfarth defendants' allowing the entry of a Default Order followed by a Default Judgment in the amount of $692,405.31, Jere Albright would have been able, at a trial on the merits, to have obtained a decision in his favor because he would have proved (1) that the introduction that he had made for Alan Neuman to Gerritt Mueller had led to a perfectly legal Standby Letter of Credit and (2) Albright had no contractual or other legal relationship to Alan Neuman, or his company. Had there been a trial on the merits, Mueller International would

have been the principal defendant. Also, if there had been a trial on the merits which, but for the negligence and malpractice of the Seyfarth defendants there would have been, either Jere Albright and/or Mueller would have been able to prove that Mueller had always been ready, willing and able to perform duties under the Standby Letter of Credit, but that Alan Neuman would not and did not comply with his obligations under the letter of credit and therefore tried to mislead the California Court into believing that it was Mueller and possibly Albright who had failed to comply with the Standby Letter of Credit rather than Alan Neuman Productions, Inc., and Alan Neuman. ***

21. But for the Seyfarth defendants' failure to use the professional competence customary of attorneys in both California and Illinois, the Court in California would have been informed that Neuman had not performed his obligations under the Standby Letter of Credit with Mueller International. But [for] Seyfarth's negligence and incompetence, a different and more favorable result would have been achieved in the underlying California action when there would have been a trial on the merits rather than merely a prove-up on an improperly entered default. Plaintiff herein, an unnecessary co-defendant in the California case, either would have been dismissed for lack of service, or he would have obtained a substantial judgment against Neuman."

■ Under the Federal rules, a party may contest personal jurisdiction without filing a special appearance and motion to quash service. The party may file a general appearance along with a Rule 12(b)(2) motion for dismissal on the basis of lack of jurisdiction over the person at any time before filing an answer. (Fed. R. Civ. P. 12(b)(2).) In the alternative, the party may assert lack of personal jurisdiction or insufficiency of service of process as a defense in the answer. (*Grammenos v. Lemos* (2d Cir. 1972), 457 F.2d 1067; *Bjorgo v. Weerden* (7th Cir. 1965), 342 F.2d 558.) Once a default is entered, however, the party can only move to vacate the default, which is not a right, and instead is a matter left to the discretion of the district court judge. Fed. R. Civ. P. 55(a).

Once a default is entered, the defendant may not defend on the merits. The plaintiff is permitted to establish a *prima facie* case and damages. (Fed. R. Civ. P. 55(a).) Thus, in order for Albright to have been protected, defendants would have had to file a Rule 12(b)(2) motion, or file an answer raising the defense of lack of personal jurisdic-

tion or proper service of process. Defendants allegedly failed to do this. Instead, they merely monitored the Federal district court file to see whether a return of service was filed. Monitoring the docket proved useless, because Rule 4(g) of the Federal Rules of Civil Procedure provides that "failure to effect proof of service does not affect the validity of the service."

Once they were informed the Neuman plaintiff planned to enter a default, defendants still did nothing. Consequently, a default was entered. Defendants still neglected to take any action. They failed to contact opposing counsel, failed to file a Rule 12(b)(6) motion, and failed to file an answer raising the defenses of service and jurisdiction.

We find that these allegations sufficiently state a claim for legal malpractice. The allegations indicate Albright's hiring of the law firm; Albright's instructions regarding the California lawsuit; defendants' incorrect advice that service was not effective if service had not been returned; defendants' failure to personally contact the opposing attorneys, or to appear before the court; the parties' notification that plaintiff's counsel in Neuman intended to obtain a default judgment; defendants' failure to personally contact opposing counsel or appear before the court once they knew of the impending default; and defendants' failure to adequately explain the affidavit discrepancies to the Federal district court. Furthermore, the allegations sufficiently allege that, but for the negligence described, Albright could have defended the Federal suit on its merits and would not have suffered the default judgment for well over half a million dollars.

■ Defendants maintain that, as a matter of law, it is impossible to show legal malpractice where the client informs the law firm that he was not served. Defendants cite the companion cases of *Floyd v. McFadden* (1985), 284 S.C. 428, 327 S.E.2d 73, *Stewart v. Floyd* (1980), 274 S.C. 437, 265 S.E.2d 254, and *Floyd v. Kosko* (S.C. App. 1985), 329 S.E.2d 459. However, the fourth companion case, *Floyd v. St. Paul Fire & Marine Insurance Co.* (S.C. App. 1985), 328 S.E.2d 132, makes clear that the plaintiff's conduct was held to be a contributing proximate cause to the damage suffered, because plaintiff failed to forward the summons and complaint to his insurer or its attorney after plaintiff had been served. In contrast, the present case involves no contributory negligence issue. Moreover, Albright alleges there was no actual service.

Finally, Albright alleges he advised defendants, *e.g.*, of the January 9, 1984, letter informing Albright that the opposing counsel in Neuman intended to obtain a default, and Albright instructed defend-

ants to defend the suit on the merits without regard to the lack of service. This is supported by the record, where Carroll, an attorney in defendants' California office, represented Albright and argued the motion to vacate the default in the Federal district court. Carroll explained why defendants failed to take any action following the attempted service:

"MR. CARROLL: We did know that when we first heard from our client in December, that there had been an attempt made, that he disputed the effectiveness of that attempt. We then started checking the court file. \* \* \*

THE COURT: Did you contact opposing counsel?

\* \* \*

Why didn't you call counsel and say, 'We intend to defend this case'?

MR. CARROLL: The fact is we looked at the case. We thought all right, they're not going to rely on that December attempt to serve process and we decided to let sleeping dogs lie. Obviously, had we phoned opposing counsel \* \* \* this never would have happened.

THE COURT: But you didn't check with opposing counsel, I just don't understand this.

\* \* \*

Why didn't you just call and ask them whether they intended to rely [on the service]?

MR. CARROLL: Your Honor, if they weren't relying on it, we didn't want to bring it to their attention. \* \* \*

\* \* \*

THE COURT: Why didn't you, as counsel for him, just tell opposing counsel that you would accept service and that was sufficient?

MR. CARROLL: I did, your Honor, as soon as I had any contact myself with the client. The very first time I talked with him, I said, *'Look, get rid of this problem. Just accept service and defend on the merits,' and he agreed to that.''* (Emphasis added.)

■ Defendants argue that, as a matter of law, no malpractice occurs where the attorney from time to time checks the court file to determine whether a return of service was filed. In *Packard Press Corp. v. Com Vu Corp.* (E.D. Pa. 1984), 584 F. Supp. 73, and other cases cited by defendants, the issue was whether a default should be vacated. Unlike the present suit, those cases did not determine whether the attorney committed malpractice allowing a default. More-

over, the relevant rule provides that failure to file proof of service within the 20-day period allowed for answering the complaint does not affect the validity of the service. Fed. R. Civ. P. 4(g).

Next, defendants highlight some rather dramatic language contained in the lengthy complaints concerning specifics of the Neuman dispute. We view this language as surplusage, which does not provide a basis for dismissal, and should merely be stricken. *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.

We hold that the trial court erred in dismissing count I under section 2—615.

■■ The trial court also dismissed count I pursuant to section 2—619(a)(9) of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) The trial court found that the claim asserted against defendants was barred by other affirmative matter, *i.e.,* the Neuman decision in the Federal district court. The trial court noted Albright's allegation that, but for the negligence, he would have received a trial on the merits rather than "merely a prove-up on an improperly entered default." The court found that in the Federal hearing there were "exhibits and documents submitted on behalf of both sides." The court continued, "Whether [Albright] could or should have presented any other witnesses is beside the point. [The Federal judge] certainly could have denied the motion for the judgment to be entered based upon evidence submitted by either or both sides." Similarly, defendants argue that, as a matter of law, the default order did not injure Albright because he in fact received a full trial on the merits.

Our review of the record indicates that the Federal district court hearing consisted of Neuman's proving up a *prima facie* case and damages. Numerous quotations from the record show that all parties and the district court understood that they were "not today trying to urge the Court to determine liability. *** The scope of the damages is in issue today ***." The court replied: "I couldn't agree with you more. That's why you're here, so plaintiff can prove up his damages." Later, the court commented:

> "I don't care what's pleaded. You've got to prove it up. Just because you put something on a pleading doesn't entitle you to it. You've got to support it with some kind of *prima facie* showing. And I don't think that what I've seen here—you haven't given us anything on your RICO damages. And frankly, I'm not very much impressed, to be candid with you."

Any examinations of the merits of the liability issue was extremely limited and tangential to the damages questions. For example, the trial court discussed the issue with one of the attorneys:

"MR. FRANCONE: Well, the complaint alleges a contract and that is definitely a liability issue to now come in and say it's not really the contract.

THE COURT: I think so, too, but we're going to have to face it because he's trying to get it in under damages. Now, if there is some oral modification[ ] concerning the exposure or limited liability, or something of this kind, that goes to damages, I suppose I'll have to look at it. If it relates only to the terms of the contract, *per se,* then I agree with you that liability has been determined."

At another point, the district court emphasized, "I'm not trying it on liability, I'm trying it on damages." After Neuman rested, the court told Albright's counsel: "You have one hour to go on your case and you are finished." (Albright's case actually extended beyond the single hour due to Neuman's cross-examination of Albright and testimony regarding attorney fees.)

We hold that the trial court erred in dismissing count I under section 2—619(a)(9). A trial on the merits of the liability issue was not held in Neuman.

■■■ The trial court in the present case also dismissed count III under section 2—615.

In count III, plaintiff alleges fraud, based on defendants' allegedly "hatching a scheme" with opposing counsel in Neuman, in order for defendants to "cover up their own malpractice." To accomplish this result, defendants filed the second affidavit, which "was artfully drawn to make it appear that the incident of a man approaching Albright and advising him that he had left a package for him was the same man whose affidavit states that he served Albright with summons and complaint in a package." Defendants claimed the affidavit was "grammatically true," but that there was no actual personal service. This affidavit was then used "to advise the [Federal court] Judge that Albright was lying both to his own attorney and in his denial of service. Albright's attorney was negligent in not responding, either to explain the ambiguity or to deny his client had lied."

Count III alleges further that the fraud "consisted of inducing [Albright] to sign the unnecessary and deliberately ambiguous affidavit." Furthermore, the fraud resulted from a conspiracy with Neuman's counsel to "act against [Albright's] interests in an effort to protect the Seyfarth defendants from their own legal malpractice."

A cause of action for fraud must include specific allegations of facts from which fraud may be inferred. (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 435 N.E.2d 528.) There

simply are no factual allegations presented here to support a fraud claim. The references to a plan to get Albright to sign a "grammatically correct" but vague affidavit are insufficient to support the cause of action. We agree with the trial court that count III fails to state a cause of action, and we hold that it was properly dismissed under section 2—615.

For the reasons stated, the judgment of the circuit court of Cook County dismissing count I of the fourth amended complaint under sections 2—615 and 2—619 is reversed. The judgment dismissing count III is affirmed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Affirmed in part; reversed and remanded in part.

RIZZI and FREEMAN, JJ., concur.