ANTHONY GRUSE, Plaintiff-Appellee, v. FRANK BELLINE, Defendant-Appellant.

Second District   No. 84—0945

Opinion filed December 4, 1985.

Joseph I. Adler and Charles E. Adler, both of Chicago, for appellant.

Thomas E. Callum, of Callum, Anderson & Deitsch, of Wheaton, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Frank J. Belline, an attorney, appeals from a judgment for $64,500 entered against him following a jury verdict in favor of plaintiff, Anthony Gruse, a former client, based upon plaintiff's complaint for legal malpractice.

On appeal, defendant contends that (1) the verdict was not supported by the evidence, (2) the plaintiff failed to prove certain damages, and (3) the trial court committed prejudicial error in denying certain instructions tendered by him.

In essence, plaintiff's complaint alleges a cause of action for attorney malpractice against defendant arising from defendant's failure to properly advise plaintiff regarding a mortgage financing contingency clause contained in a real estate sales contract signed by plaintiff which he failed to perform, resulting in the loss of his earnest money, in two judgments against him, and in the expenditure of attorney fees. At the jury trial, the following evidence relevant to the issues raised on appeal is summarized.

Plaintiff testified that in early 1977 he was a self-employed owner of an auto parts business. In April of that year, after many years of living in an apartment, plaintiff and his wife began looking for a home to purchase. Lisa Formusa, a sales associate with G. Grant Dixon & Company, a realty company, showed them a house in Oak Brook which was then owned by Herbert and Pauline Imhoff. A price of $275,000 was ultimately agreed upon, and a real estate sales contract was signed on April 24, 1977. Among the provisions of the contract was a mortgage financing contingency clause providing that the contract would become null and void if, within 25 days, plaintiff, after reasonable efforts, was unable to secure a commitment for a loan of 80% of the purchase price and so notified the seller in writing.

Also, on April 24, plaintiff executed and tendered to the realty company a promissory note, due nine days after acceptance, in the sum of $25,000 as earnest money. Plaintiff then consulted LaGrange State Bank, his own bank, but was unable to borrow any money for the earnest money and was told he could not qualify financially for a mortgage. Plaintiff borrowed $12,500 from relatives and used this money to pay the realtor half of the amount due on the note. He was otherwise unable, however, to arrange any money for financing the balance of the note. Plaintiff informed Lisa Formusa of his difficulties and she told him she would talk to some other banks on his behalf. She later directed him again to the LaGrange State Bank, but a loan officer whom he knew there told plaintiff he was wasting his time. Formusa nevertheless encouraged plaintiff to apply to other lenders

she suggested. Plaintiff, assuming that another bank would not help him if his own bank had refused, did not look further for financing and decided he needed an attorney to get him out of the contract. He then consulted defendant.

Plaintiff testified to several consultations between himself and defendant. He testified to informing defendant of his inability to perform his undertakings under the real estate sales contract, expressing a need to get out of it right away. Defendant requested a retainer of $2,000, stating that he doubted that plaintiff would ever be able to get a mortgage. According to plaintiff, he informed defendant of Lisa Formusa's assurances that mortgage money was available, and defendant responded not to pay any attention to her or waste his time applying for financing. Defendant said that plaintiff would never qualify for a mortgage, and "that they are trying to railroad you. *** [W]e can sue them and make big bucks on this." On May 17, 1977, defendant wrote to the realty company on plaintiff's behalf, demanding return of the promissory note and the $12,500 partial payment, stating that the failure to make this return within 10 days would leave defendant no alternative "but to pursue the return of the same through other means."

Plaintiff thereafter believed that defendant would file suit against the realty company and Herbert Imhoff on theories of fraud and the unauthorized practice of law. Plaintiff was confident that defendant was handling the matter ably. A lawsuit was subsequently filed against plaintiff in the circuit court of Du Page County, and on January 7, 1980, the court found that Herbert and Pauline Imhoff were entitled to summary judgment for $15,000 on account of plaintiff's breach of the real estate sales agreement. The Imhoffs were also found entitled to the $12,500 cash deposit plaintiff had given the realty company, as well as to the balance due on the promissory note, subject to the commission owed the realty company.

While this suit was pending, plaintiff applied for a credit card at a major retail store. On January 4, 1980, he was refused credit on the grounds that a judgment had been entered against him. Plaintiff then learned that a judgment by confession had been taken against him by the realty company in the circuit court of Cook County on June 20, 1977, and confirmed in January 1980. This judgment awarded the realty company $13,296.69 on the promissory note, which judgment included an award of interest and attorney fees. Having thus learned for the first time about the judgment in Cook County, plaintiff made several attempts to call defendant. He eventually made contact and was told by defendant not to worry about this judgment. Defendant

stated that he was too busy to represent plaintiff in the matter, but that if plaintiff got a white card in the mail relating to the judgment, plaintiff should hire another lawyer.

Defendant testified both as an adverse witness and on his own behalf. He stated he had been a practicing attorney since 1955. In 1977, approximately 50% of his practice involved matters relating to real estate. When plaintiff had consulted him, plaintiff had related that Lisa Formusa had represented that she could obtain mortgage financing for plaintiff if plaintiff were unable to do so. Plaintiff had further related that he had been able to make only a partial payment toward the $25,000 earnest money and had negotiated an extension for the payment of the balance. At a later meeting, defendant accepted a $2,000 retainer and requested that plaintiff prepare a handwritten record of his prior dealings with Lisa Formusa. Defendant later reviewed that document, as well as correspondence which Formusa sent plaintiff on May 9, 1977, directing plaintiff to seek financing at La-Grange State Bank. Defendant then performed a title search on the Imhoff property and discovered that title was held in a land trust. He next performed legal research and discovered case authority (*Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431) leading him to believe that a real estate sales contract signed as seller by the beneficiary of a land trust without disclosing the beneficial interest was unenforceable against the buyer. Defendant determined that plaintiff's best course of action was to contest the validity of the contract on this basis.

Defendant testified that, in the presence of plaintiff and his wife, he had placed telephone calls to Formusa and to the realty company. During these calls, defendant was told that the realtors felt mortgage financing could be made available, despite plaintiff's inability to obtain the remaining $12,500 in earnest money. Defendant did not at this time advise the realtors of his views regarding the "legalistics" of the contract's validity. Following these telephone conversations, plaintiff stated that there was no way he was going to make a mortgage application because he could not come up with the balance of the down payment.

Defendant testified that he had explained to plaintiff that there was a likelihood of a lawsuit being filed against him and that if this took place, defendant would file a counterclaim alleging the invalidity of the contract because of the failure to disclose the land trust and because the extent of the realty company's involvement in the transaction constituted the unauthorized practice of law.

Defendant acknowledged that he did not file suit to declare the

contract invalid, and did not mention his theory of invalidity in the May 17, 1977, letter he wrote the realty company. He did, however, file a counterclaim on these grounds when the realty company brought its suit in Du Page County against plaintiff. The counterclaim was rejected by the trial court on the basis of this court's opinion in *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, 391 N.E.2d 1105. Following the rendering of judgment against plaintiff on the suit and counterclaim, plaintiff instructed defendant to do nothing with the files because plaintiff was in the process of retaining other counsel.

Defendant testified that he was unaware during his representation of plaintiff that a default judgment had been taken against plaintiff in Cook County in 1977. Defendant also testified that he believed plaintiff had never actually made a good faith application for mortgage financing to a lending institution. In defendant's experience, there was a rule of thumb that at least three applications for financing had to be made and rejected in order for a buyer's efforts to obtain financing to be considered made in good faith. Defendant acknowledged that he did not advise plaintiff to make three such applications. At the time of his calls to Lisa Formusa, defendant had not gone into plaintiff's finances or advised him to put in a loan application. He stated he had not been retained by plaintiff for the purpose of securing financing for him.

William Stefan, an attorney, testified as an expert witness for plaintiff. In response to a hypothetical question, he opined that a lawyer's conduct did not rise to the level of skill and diligence required of an attorney in the circumstances of this case where there was a failure to advise a client to apply for mortgage financing and, if his application was denied, to avail himself of the mortgage financing contingency clause in the contract.

Attorney James Perner testified as an expert witness for defendant. He also was asked a hypothetical question regarding the propriety of an attorney's conduct. Perner gave his opinion that an attorney relying upon the theory that a real estate sales contract was invalid if signed only by the beneficiary of an undisclosed land trust was following the state of the law as it existed in 1977 and was acting reasonably within the standards of the legal community. He also testified that if the client was unable to obtain financing, then utilization of the mortgage financing contingency clause would have been another avenue to pursue to get out of the contract. If the broker advised the client to apply for financing at institutions having mortgage money available, and if the client would not do so, the attorney would act reasonably in not utilizing the mortgage finance contingency clause

because it would be a useless act to advise the client to apply. If, however, the client could not obtain the financing and wanted to get out of the contract, it would possibly have been better for the attorney to advise the client to apply for a loan.

■ Defendant's first contention on appeal is that the jury's verdict was against the manifest weight of the evidence and he is entitled to reversal of the judgment against him. He maintains that plaintiff may not base liability against him upon his failure to advise him regarding the mortgage financing contingency clause in the real estate sales contract, both because mortgage money was available and because it was plaintiff's refusal to apply for a mortgage commitment that had prevented him from obtaining this financing. Defendant maintains that he therefore could not ethically or in good faith have taken advantage of the mortgage financing contingency clause. He also states that, even assuming he was aware that the mortgage financing contingency clause was a viable option, the alternate course of action upon which he decided was a sound one in view of the state of the law as it then existed and that this strategy was disclosed to plaintiff and ratified by him. He argues that the unfavorable result cannot be viewed as a breach of his duty.

Initially, we must point out the applicable rule which is applied when an appellant seeks reversal of a jury verdict. Reversal of a jury verdict must be supported by evidence which, when viewed most favorably to the party prevailing in the trial court, nevertheless so overwhelmingly favors the appellant that no contrary verdict could stand. *York v. Stiefel* (1983), 99 Ill. 2d 312, 321, 458 N.E.2d 488.

■ A cause of action based upon legal malpractice is a tort action for negligence premised upon a breach of an attorney's duties to his client. (*Yates v. Muir* (1985), 130 Ill. App. 3d 604, 608, 474 N.E.2d 934; see generally Horan & Spellmire, *Lawyer's Liability in Illinois: Current Legal Issues*, 69 Ill. B.J. 288 (1981).) An attorney is liable to his client for malpractice when he fails to exercise a reasonable degree of care and skill (*Smiley v. Manchester Insurance & Indemnity Co.* (1978), 71 Ill. 2d 306, 313, 375 N.E.2d 118; *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 394 N.E.2d 559), which is a question of fact (*Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 1020, 313 N.E.2d 180), and must generally be established through expert testimony (*Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559). A lawyer does not guarantee that his judgment is infallible, nor is he liable for mere errors of judgment. (*Spivack, Shulman & Goldman v. Foremost Liquor Store, Inc.* (1984), 124 Ill. App. 3d

676, 683, 465 N.E.2d 500.) Further, an attorney's conduct is to be viewed in the context of events prevailing at the time of the alleged malpractice, not in light of subsequent developments. *O'Brien v. Noble* (1982), 106 Ill. App. 3d 126, 130, 435 N.E.2d 554.

The testimony of the witnesses below is in sharp dispute. Plaintiff testified he talked with a loan officer at his own bank, the LaGrange State Bank, and was told he could not qualify financially for a mortgage. He assumed another bank could not help him and he consulted defendant to get him out of the contract. In one of several conversations with defendant, he told defendant that Lisa Formusa informed him that mortgage money was available, but defendant said not to pay any attention to her, that he would never qualify for a mortgage. It is undisputed that the defendant did not advise him to apply for a mortgage commitment, and failed to advise plaintiff of the mortgage financing contingency clause or how to take advantage of it. An attorney testifying for plaintiff gave his opinion that the conduct of the attorney under the particular circumstances did not rise to the level of skill and diligence required.

Defendant testified that Formusa told him that mortgage financing could be arranged and plaintiff refused to make further application other than at his bank. He felt that he was not retained by plaintiff for the purpose of obtaining financing and he determined the best course of action was to contest the validity of the contract on another basis. Although defendant's expert testified defendant acted reasonably under the circumstances, he also stated on cross-examination that if a client could not obtain mortgage financing and wanted to get out of the contract, it would possibly have been better to advise the client to apply for a loan.

■ The credibility of witnesses and the weight to be given testimony are typically matters for a jury to consider. (*Mizowek v. De-Franco* (1976), 64 Ill. 2d 303, 309-10, 356 N.E.2d 32.) There was evidence available to the jury supported by expert testimony which, if found credible, was sufficient to establish that defendant failed to exercise a reasonable degree of care and skill under the circumstances.

Defendant also argues that even assuming he "was faced with two (2) viable options," his decision to attempt to invalidate the agreement on the basis that the real estate sales contract was unenforceable because it was signed by the beneficiary of a land trust without disclosing the beneficial interest was prudent at the time. He contends that he exercised good judgment, and that the unfavorable result which was occasioned by a change in the case law cannot be viewed as a breach of duty.

Defendant's contention is not meritorious for even his expert, as stated above, testified that it would have been better to tell a client to go out and put in a loan application where the client could not get financing and wanted to get out of the contract. There is no evidence that defendant ever disclosed to plaintiff the mortgage financing contingency clause or advised him regarding that option. While defendant testified plaintiff did not want to make application and financing was available, this testimony was apparently rejected by the jury. For the reasons given, the verdict of the jury in favor of plaintiff should stand.

■ Defendant's second contention on appeal is that plaintiff failed to offer evidence establishing either payment or the collectability of the two judgments against him in Cook County and Du Page County for which the trial court erred in denying his post-trial motion for a remittitur. While defendant additionally asserts in his reply brief that plaintiff failed to properly introduce and support both circuit court proceedings, this argument is waived as not being raised in defendant's initial brief (87 Ill. 2d R. 341; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 393, 469 N.E.2d 1085), and, although objected to on several grounds below when introduced into evidence, was not objected to on this basis. See *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 495, 89 N.E.2d 354.

■ When an attorney breaches his duty to a client, the attorney is liable for any loss which ensues from that act. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 652, 406 N.E.2d 70; see Annot., 45 A.L.R.2d 62 (1956).) Damages, however, will not be presumed, and the client must bear the burden of proving that he suffered an injury because of his attorney's breach of duty. (*Sheetz v. Morgan* (1981), 98 Ill. App. 3d 794, 801, 424 N.E.2d 867.) The injuries resulting from legal malpractice are not personal injuries, but are pecuniary injuries to intangible property interests. (*Yates v. Muir* (1985), 130 Ill. App. 3d 604, 609, 474 N.E.2d 934.) Defendant relies mainly upon *Goldzier v. Poole* (1898), 82 Ill. App. 469, for the proposition that the payment or collectability of a judgment sustained on account of an attorney's malpractice must be shown before the amount of the judgment may properly be considered an element of damages. *Goldzier* is inapposite, for the attorneys in that case were hired to prosecute, not defend a claim, and the court held that "in order to recover beyond nominal damages, it must be shown that it was a subsisting debt, and that the debtor was solvent." 82 Ill. App. 469, 471.

■ ■ In Illinois, an accepted measure of damages for breach of an insurance contract to defend is the amount of the judgment ren-

dered against the insured (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144-45, 384 N.E.2d 335); and in the context of a suit for medical services, the amount the claimant has paid or become liable to pay. (*American National Bank & Trust Co. v. Peoples Gas Light & Coke Co.* (1963), 42 Ill. App. 2d 163, 177, 191 N.E.2d 628.) Generally, where an attorney is engaged to defend an action that is lost by his negligence, the amount of the judgment suffered by the client is a proper element of recovery in a malpractice proceeding against the attorney. (7 Am. Jr. 2d *Attorneys at Law* sec. 226 (1980).) In the context of a legal malpractice action, it was held in *Montfort v. Jeter* (Tex. 1978), 567 S.W.2d 498, that an unpaid judgment against the plaintiff shown to have resulted from his attorney's unauthorized act was evidence of actual damages even though it remained unpaid at the time of trial. (567 S.W.2d 498, 499-500.) Here, plaintiff introduced into evidence the two judgments against him, and we believe this was proper proof of damages absent any evidence to the contrary.

■ Defendant's final contention on appeal as entitled in his brief is that the trial court committed prejudicial error in refusing several of his jury instructions. Without any citation of authority, defendant makes two summary statements in his brief supporting this contention. He also incorporates by reference a photocopy of his post-trial motion relating to jury instructions in an appendix to his brief. This method of presenting an argument in an appellate brief does not comply with Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)), nor is an appendix to a brief to be used for such a purpose as presented by defendant (87 Ill. 2d R. 342(a)). Moreover, in the post-trial motion none of the instructions referred to contain a citation to the appropriate page of the record where the tendered instruction is found or where the court ruled on the instructions during the conference on instructions.

Where an argument in a brief is not presented in accordance with Rule 341(e)(7), the issue is waived. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483, 468 N.E.2d 1162; *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89, 474 N.E.2d 911; *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 881, 467 N.E.2d 599.) Under the circumstances here, defendant's contention of instructional error is waived.

■ Even were the merits addressed, we would find no error in the court's refusal of the defendant's instructions. The requested instructions which were denied were either adequately covered by other instructions given by the court or properly refused as lifting abstract legal principles out of opinions which would not aid the jury. One defense instruction is not even contained in the record. From our exami-

nation of all the instructions given and refused, we conclude there was no instructional error.

While in his appellate brief defendant also complains that the trial court erred in giving its own instruction on the issues, the only argument advanced is that the "instruction reveals an articulated statement of plaintiff's case and a mere summary of defendants." This is hardly the type of reasoned argument contemplated in Rule 341(e)(7), and we will not address it.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH, P.J., and STROUSE, J., concur.