JOAN CASHMAN *et al.*, Plaintiffs-Appellants, v. COOPERS AND LY-
BRAND, Defendant-Appellee.

Second District No. 2—92—1473

Opinion filed November 10, 1993.—Rehearing denied December 13, 1993.

Richard S. Reizen, James X. Bormes, Arthur W. Aufmann, and Paul A.
Castiglione, all of Joyce & Kubasiak, P.C., of Chicago (Edward T. Joyce, of
counsel), and William M. Graham and Thomas L. Sbertoli, both of Graham,
Graham & Sbertoli, Ltd., of Libertyville, for appellants.

Harold C. Wheeler and Alexander S. Vesselinovitch, both of Seyfarth,
Shaw, Fairweather & Geraldson, of Chicago, and George A. Davidson, of
Hughes, Hubbard & Reed, of New York, New York (William R. Maguire, of
counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the
court:

Plaintiffs, a group of shareholders and some former directors
and officers of Stotler Group, Inc. (SGI), appeal from an order of

the circuit court of Lake County which dismissed their complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/ 2—615 (West 1992)). Plaintiffs had sued Coopers & Lybrand, an accounting firm (the accountants), alleging breach of contract, negligence and fraud. The circuit court dismissed plaintiffs' third amended complaint based on a lack of standing and for failure to state a claim for breach of contract. We affirm.

Plaintiffs alleged that the accountants served as independent public accountants for SGI and its subsidiaries, including Stotler and Company (Stotler), which was a futures commission merchant (FCM). The accountants allegedly audited the financial statements of SGI and its subsidiaries for the periods ending December 31, 1988, and December 31, 1989, and issued unqualified opinions that those financial statements fairly represented SGI's financial condition. According to plaintiffs' complaint, the accountants' audit reports were given to plaintiffs, SGI, Stotler, the Securities Exchange Commission (SEC), the Commodity Futures Trading Commission (CFTC) and others. Plaintiffs claim that the rules of the American Stock Exchange as well as the terms of certain engagement letters between the accountants and SGI required the accountants to provide SGI's shareholders with copies of their opinions.

The accountants' reports stated that the audits were properly performed and noted specifically that SGI's subsidiaries had exceeded minimum net capital levels imposed by the SEC and the CFTC. Plaintiffs allege that during the course of auditing SGI and its subsidiaries the accountants "became familiar with SGI's management information systems, computer programs, accounting policies, regulatory net capital requirements, revenue recognition policies, public filings, press releases, internal controls and personnel." They also claim that the accountants "became familiar with SGI's internal auditing systems and [were] aware of material accounting weaknesses and internal control weaknesses which caused SGI's books and records to not accurately reflect SGI's accounts."

Plaintiffs claim that CFTC regulations require FCMs like Stotler to maintain net capital equal to 4% of customers' segregated funds. Net capital is the amount by which an FCM's current assets exceed liabilities. Plaintiffs allege that as of December 31, 1989, in order to correct a net capital problem, Stotler transferred certain noncurrent capital assets worth about $13 million to SGI in return for SGI assuming a like amount of Stotler's liabilities. Stotler remained secondarily liable for the liabilities assumed by SGI.

According to plaintiffs, the accountants concluded that the above transfer corrected Stotler's net capital deficiency. However, plaintiffs claim that CFTC regulations prohibited Stotler from excluding contingent liabilities when computing net capital. Federal regulators subsequently declared Stotler to be in violation of its net capital requirements and the CFTC filed an administrative complaint against Stotler. Stotler settled the dispute and agreed to a permanent trading ban and the revocation of its registration as an FCM. The SEC filed a complaint against Stotler which also was settled. Part of the settlement agreement required revocation of Stotler's registration as a government securities broker-dealer.

Plaintiffs allege that when the above facts became publicly known, the price of SGI's stock fell from a high of approximately $13.75 per share in 1989 to $0 per share in August 1990. SGI declared bankruptcy in August 1990. Plaintiffs claim that SGI would have corrected the net capital problem if the accountants had brought it to the attention of SGI's management. They allege that SGI did not have sufficient time to remedy the problem after it was informed of the problem's existence by government regulators. Plaintiffs claim that they were damaged because they were not afforded an opportunity to minimize their loss on their purchase of SGI stock. They state that if the accountants had spotted the problem, plaintiffs could have demanded that SGI remedy the problem and could have sold their stock if it was not taken care of to their satisfaction. Plaintiffs allege that they lost the value of their investment in SGI's stock, and that their damages are separate and distinct from the damages incurred by SGI and Stotler.

Specifically, plaintiffs allege that the accountants breached the contract with SGI, as to which plaintiffs were third-party beneficiaries, that the accountants were negligent in performing their services, and that the accountants recklessly misrepresented the financial condition of SGI and its subsidiaries knowing that the plaintiffs would rely on the audit reports. As noted, the circuit court dismissed the plaintiffs' complaint for lack of standing and for failure to state a breach of contract claim. The plaintiffs filed a timely appeal.

## STANDING

In this court, the plaintiffs argue that they have standing to prosecute their claims because the accountants owed contract and tort duties to both SGI and the plaintiffs, and because the accountants caused direct injury to both SGI and to the plaintiffs. The

plaintiffs state that they are not complaining of the diminution in the value of their shares of stock, but are suing for the lost opportunity to make a fully informed investment decision regarding their continued ownership of SGI stock.

■ The accountants argue on appeal that the plaintiffs' claims are in fact claims for the diminution in the value of their stock, are thus derivative, and were properly dismissed. The accountants also argue that they did not owe any direct duty to the plaintiffs and that the plaintiffs have failed to allege a separate and distinct injury required to maintain an independent action. Whether a party has standing to sue is a question of law (*Kohls v. Maryland Casualty Co.* (1986), 144 Ill. App. 3d 642, 644) which we review *de novo* (*Uhwat v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 295, 302). The shareholder standing rule

> "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment. [Citation.] There is, however, an exception to this rule allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." (*Franchise Tax Board v. Alcan Aluminum Ltd.* (1990), 493 U.S. 331, 336, 107 L. Ed. 2d 696, 704, 110 S. Ct. 661, 665.)

The plaintiffs cite *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, in support of their argument. *Zokoych* states:

> "Where there is no showing that plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation [citation], and a stockholder may not seek relief on his own behalf. However, this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders. [Citation.] A suit brought by a stockholder upon a personal claim is by its nature distinguishable from a proceeding to recover damages or other relief for the corporation. [Citation.] Not every allegation of wrongdoing is a Simon-pure charge of individual injury, but a court must preliminarily determine if the 'gravamen' of the pleadings states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the sharehold-

ers or affects them as a whole." (*Zokoych*, 36 Ill. App. 3d at 663.)

The plaintiffs rely on both *Zokoych* and the case of *Mann v. Kemper Financial Cos.* (1992), 247 Ill. App. 3d 966. Each case is distinguishable.

In *Zokoych*, the plaintiff, who was one of two stockholders in a small tool company, sued the second stockholder and others alleging that the second stockholder did not return the plaintiff's pledged stock in the company in breach of an agreement between them, removed the plaintiff as president of the company and stopped paying his salary, and removed the company's equipment from its premises. (*Zokoych*, 36 Ill. App. 3d at 657.) The plaintiff claimed that he was deprived of collecting debts the company owed to him, that his business reputation had been destroyed and that he was wrongfully denied his salary and benefits. (*Zokoych*, 36 Ill. App. 3d at 659.) The court found, in an abbreviated discussion, that the plaintiff had a cause of action separate from any cause of action belonging to the tool company. *Zokoych*, 36 Ill. App. 3d at 663-64.

The *Zokoych* plaintiff clearly was injured in a personal capacity, apart from his role as a shareholder in the tool company. He lost his position at the company, his salary and his business reputation. Moreover, the court in that case found that the second stockholder owed a fiduciary obligation to the plaintiff to act honestly and with the utmost good faith in running the company. (*Zokoych*, 36 Ill. App. 3d at 666.) Thus, *Zokoych* concerns an allegation of injury upon a personal claim and a duty directly owed by the second stockholder to the plaintiff. *Zokoych*'s unique factual situation readily distinguishes that case from the present one.

In *Mann*, investors in mutual funds sued the funds' manager and sponsor alleging breach of various State and Federal statutes, common-law fraud and breach of fiduciary duty. (*Mann*, 247 Ill. App. 3d at 968-73.) The investors claimed that the defendants' speculative and wrongful conduct in managing the funds and their misrepresentations in the funds' prospectuses caused the investors to invest in the funds and retain their investments. (*Mann*, 247 Ill. App. 3d at 971-73.) The court held that the investors had standing to assert their fraud and breach of fiduciary duty claims, among others, and that the claims were not derivative. *Mann*, 247 Ill. App. 3d at 974-84.

*Mann* is distinguishable for two reasons. First, there is no fiduciary duty between the plaintiffs here and the accountants, as the *Mann* court found there was between the investors and the mutual

fund managers. (*Mann*, 247 Ill. App. 3d at 980.) The plaintiffs here do not allege that a fiduciary relationship exists. Second, the *Mann* court found, with regard to the fraud count, that only the investors, not the mutual funds themselves, could allege that misrepresentations in the prospectuses induced them to invest. (*Mann*, 247 Ill. App. 3d at 979-80.) The plaintiffs here do not complain of fraud inducing them to invest, or any similar kind of intended or reckless inducement aimed particularly at them as shareholders. In *Mann*, the fraud was directed at investors in order that their investments would enrich the defendants. Here, the accountants allegedly made the same misrepresentations to both the plaintiffs and SGI about the net capital requirements. Thus, the investors in *Mann* were the only persons who could bring the claims, while in this case either the plaintiffs or SGI could logically pursue claims against the accountants arising from the identical misrepresentations. *Mann* is not on point here.

We neither have been cited to, nor have we found, a case factually identical to this one. However, a case indirectly on point is *Holland v. Arthur Andersen & Co.* (1984), 127 Ill. App. 3d 854. In that case, the trustee in bankruptcy for a bankrupt company sued one of the company's independent accountants alleging breach of contract and misrepresentation arising out of an audit. The trustee claimed that the accounting firm's failure to disclose certain information precluded the company, its investors, and its creditors from taking steps to block the company's demise. The accounting firm argued that the trustee had no standing to bring the action because the cause of action belonged to the company's stockholders and creditors. (*Holland*, 127 Ill. App. 3d at 861.) The court held that the cause of action belonged to the company and, consequently, that the suit could be maintained by the trustee. (*Holland*, 127 Ill. App. 3d at 861-62.) We agree with *Holland* that in a situation like the one presented here and in *Holland* the corporation is the entity directly harmed by the accounting firm's alleged misdeeds. The corporation ceases to be a going concern, which necessarily results in the shareholders' stock becoming devalued. The corporation is the logical entity to pursue a claim against the accountants and to share its recovery with its stockholders if it prevails.

■ The nature of the claim brought in *Holland* is very similar to the essence of the claim brought here, and we think *Holland*'s determination that the cause of action belonged to the corporation is correct. We are not led astray by the plaintiffs' argument that they are complaining not of the diminution of their stock's value

but of the loss of an opportunity to make informed investment decisions. The real damage suffered by the plaintiffs here, and by SGI, is that SGI's stock becomes worthless due to the accountants' alleged mistakes. That the plaintiffs were deprived of the opportunity to dump their stock before word got out of SGI's precarious financial condition does not give the plaintiffs a cause of action in their own right. The plaintiffs are emphasizing a distinction without a meaningful difference.

As stated by *Zokoych*, the general rule that shareholders ordinarily do not have standing to sue when both they and the corporation are injured does not apply when the third party's wrongful acts arise out of a duty owed directly by the third party to the stockholder. (*Zokoych*, 36 Ill. App. 3d at 663.) This direct duty has been termed a "special contractual duty *** between the wrongdoer and the shareholder." (*Twohy v. First National Bank* (7th Cir. 1985), 758 F.2d 1185, 1194.) No contractual duty existed in this case between the plaintiffs and the accountants that was any different from the duty existing between the accountants and SGI. Thus, we believe no "special contractual duty" existed between the plaintiffs and the accountants. As the *Zokoych* court cautioned, we must first determine whether the "gravamen" of the complaint "states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole." (*Zokoych*, 36 Ill. App. 3d at 663.) The plaintiffs allege an injury to the corporation which affects them only indirectly. The plaintiffs have no standing under Illinois law to pursue their action against the accountants.

Because of our decision on the standing issue, we need not determine whether the plaintiffs have stated viable causes of action for breach of contract, negligence and fraud. For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.