20 October 1999

No. 2--98--1027 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

PATRECIA MURANYI, ) Appeal from the Circuit Court

  ) of Kane County.

Plaintiff-Appellant, )

)

) No. AR--97--0377

v. )

)

TURN VEREIN FRISCH-AUF, a/k/a   )

Aurora Turner Club, Inc., ) Honorable

) Donald J. Fabian, 

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE GALASSO delivered the opinion of the court:

Plaintiff, Patrecia Muranyi, sued defendant, Turn Verein Frisch-Auf, a/k/a Aurora Turner Club, Inc., under the Dramshop Act (235 ILCS 5/6--21 (West 1996)), after her husband, Wade Muranyi, was injured in an automobile accident.  Plaintiff alleged that defendant served her husband alcohol and that, as a result, he became intoxicated and caused the accident.  Plaintiff sought to recover the cost of the medical care that her husband received.

Defendant moved for summary judgment (see 735 ILCS 5/2--

1005(c) (West 1996)), asserting that plaintiff suffered no loss because her medical expenses had been reimbursed through the health insurance coverage that the Muranyis' received as a benefit of Wade Muranyi's employment.  Plaintiff responded that the collateral source rule barred the court from reducing defendant's liability by any sums she received from the insurance carrier.  The trial court granted defendant summary judgment, and plaintiff timely appeals.

Plaintiff argues that, under the collateral source rule, she is entitled to recover all the damages for which defendant is liable under the Dramshop Act, regardless of whether a third party wholly unconnected with defendant has also reimbursed her for these losses.  Defendant responds that plaintiff may not invoke the collateral source rule because she suffered no loss, having received all her claimed medical expenses in the form of insurance reimbursements and having paid no consideration for her husband's insurance policy.  Alternatively, defendant asserts that summary judgment was proper because anything defendant owes plaintiff must be offset by the payments from Wade Muranyi's insurer.

We agree with plaintiff that the trial court erred in declining to apply the collateral source rule here and that defendant is not entitled to a setoff for the payments plaintiff received from the insurer.  Therefore, we reverse the grant of summary judgment and remand the cause.

Summary judgment is proper when the pleadings, depositions, and other matters on file disclose that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996).  Our review is 
de
 
novo
.  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 7 (1997).  The parties do not dispute the crucial facts, so we move directly to the issues of law involved in this appeal.

The primary point of contention is whether the collateral source rule bars the reduction of plaintiff's damages by any sums she received in insurance payments.  Defendant maintains that, under 
Peterson v. Lou Bachrodt Chevrolet Co.
, 76 Ill. 2d 353 (1979), plaintiff, who did not pay for her husband's insurance, has in essence received a gratuity and may not now recover medical expenses that a third party actually paid.  Plaintiff claims that 
Peterson
 does not apply because an insurer's payment of medical costs is not a gratuity and the crucial consideration is whether the payment came from a source unrelated to defendant.  For the reasons that follow, we believe that plaintiff's argument is nearer the mark and that the trial court erred in ruling that her damages would have to be reduced by the amounts she received from the insurance carrier.

The collateral source rule is generally phrased in terms of common-law tort liability, but Illinois courts have also applied it to statutory causes of action, including  dramshop suits (see 
Deel v. Heiligenstein
, 244 Ill. 239 (1910) (dramshop action); 
Illinois Central R.R. Co. v. Prickett
, 210 Ill. 140 (1904) (wrongful death); 
Beaird v. Brown
, 58 Ill. App. 3d 18, 21 (1978) (dramshop action); 
Bireline v. Epenscheid
, 15 Ill. App. 3d 368, 369-70 (1973) (dramshop action)).  Under the collateral source rule, benefits received by the injured party from a source independent of and collateral to the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor.  
Wilson v. Hoffman Group, Inc.
, 131 Ill. 2d 308, 320 (1989); 
Bernier v. Burris
, 113 Ill. 2d 219, 242 (1986).  Thus, the plaintiff may recover twice for a single injury--once from the defendant and once from the collateral source.  This result leaves the rule open to the criticism that it bestows a windfall on plaintiffs, violating the principle that the purpose of tort damages is simply to make plaintiffs whole.

Courts adhering to the collateral source rule have defended this result in various ways.  Some courts reason that, if there is to be a windfall, it is more just to give it to the injured party than to the wrongdoer.  See 
Grayson v. Williams
, 256 F.2d 61, 65 (10th Cir. 1958); 
Werner v. Lane
, 393 A.2d 1329, 1335-36 (Me. 1978).  Under this broad application of the rule, it makes no difference from whom the injured party received the benefits (as long as it is not the defendant) or whether he paid any consideration for them.  What is crucial is that the tortfeasor not become the real beneficiary of a stranger's expenditure on behalf of the injured party.  See Restatement (Second) of Torts §920A, Comment b, at 514 (1977).

In 
Peterson
, however, our supreme court rejected this unconditional version of the collateral source rule.  There, the plaintiff's claimed damages included the value of medical services a charitable hospital rendered free of charge to his son.  The supreme court denied the plaintiff any recovery for these services even though they were allegedly caused by the defendant's negligence.  In so doing, the court rejected "[t]he view that a windfall, if any is to be enjoyed, should go to the plaintiff." 
Peterson
, 76 Ill. 2d at 363.  Such a view, the court reasoned, is inconsistent with the principle that "[t]he purpose of compensatory tort damages is to 
compensate
" (emphasis added) (
Peterson
, 76 Ill. 2d at 363)) and not to punish defendants by allowing plaintiffs double recoveries.

Peterson
 did not abolish the collateral source rule, but it did limit its application.  The 
Peterson
 court drew a distinction between the case before it, where the plaintiff sought "to recover for the value of services that he has obtained without expense, obligation, or liability" (
Peterson
, 76 Ill. 2d at 362, citing with approval 
Coyne v. Campbell
, 11 N.Y.2d 372, 183 N.E.2d 891, 230 N.Y.S.2d 1 (1962)), and one in which the plaintiff seeks to recover expenses for which he has also been compensated by insurance benefits.  In the latter situation, the plaintiff has in his favor the fact that he paid consideration for the coverage from which he later benefitted.  
Peterson
, 76 Ill. 2d at 362-63.  As other courts have recognized, reducing a plaintiff's damages by the amount of his insurance proceeds would deprive him not of a mere gratuity, but of the benefit of his bargain.  See 
Beaird
, 58 Ill. App. 3d at 21; 
Helfend v. Southern California Rapid Transit District
, 84 Cal. Rptr. 173, ___, 465 P.2d 61, 66-67 (1970).

The parties disagree on whether 
Peterson
 supports applying the collateral source rule to the facts here.  For two reasons, we conclude that it does.  First, the benefits here more nearly resemble the type of collateral payments that 
Peterson
 protects than those that it places outside the collateral source rule. Second, this case does not involve compensatory common-law tort damages but recovery under a specific statute that is intended not merely to compensate plaintiffs but also to regulate and even punish defendants.  Thus, 
Peterson
's rationale for avoiding double recoveries does not apply.

We explain the first of these reasons.  Defendant argues that the insurance benefits plaintiff received are essentially a gratuity because she paid no consideration for them; she merely received them from her husband's health insurer.  Plaintiff maintains that the benefits are essentially indistinguishable from the type of insurance payments that 
Peterson
 shelters under the collateral source rule.  She reasons that her family paid for the coverage indirectly in that both she and Wade Muranyi decided to forgo greater family earnings in order to obtain the policy.  We believe that plaintiff has the better argument.

Under 
Peterson
, a party who pays premiums on an insurance policy, receives the benefits and sues the wrongdoer, would be entitled to recover his medical expenses by invoking the collateral source rule (assuming that he could recover at all).  The situation here differs from this paradigmatic case in two respects that may be pertinent here.  First, Wade Muranyi did not pay premiums or other direct consideration but received the insurance coverage as a fringe benefit of his employment.  Second, the party seeking reimbursement here is not Wade Muranyi but his wife, who did not herself procure the policy or pay any direct consideration for it. We do not believe either distinction is meaningful here.

First, the mere fact that Wade Muranyi was insured by a policy he received as a job benefit, rather than one he paid for directly, is of no consequence.  Courts recognize that such an employment related benefit is not a gift but part of the employee's overall compensation.  The employee accepts health insurance in exchange for a reduction in wages.  Thus, he has constructively paid for the coverage.  See 
In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979
, 803 F.2d 304, 308 (7th Cir. 1986); 
Hall v. Olague
, 119 Ariz. 73, __, 579 P.2d 577, 579-80 (1978); 
Beck v. Edison Brothers Stores, Inc.
, 657 S.W.2d 326, 331 (Mo. App. 1983).  In deciding whether the collateral source rule applies, we do not treat the insurance payments here any differently simply because they were paid under an employer's insurance plan rather than through a conventional individual insurance policy.

The second possible distinction between this case and the paradigmatic insurance benefits case is that here the party seeking reimbursement did not herself pay for or procure the policy.  The coverage here stemmed from Wade Muranyi's employment, and he would be eligible for reimbursement regardless of his relationship to the plaintiff in this suit.  From this, defendant argues that, although the insurance coverage may be a benefit of Wade Muranyi's employment bargain, it is simply a gratuity as to Patrecia Muranyi. We disagree.

We believe defendant's argument slights "the fact that, in many respects, our legal system views a marital couple as a single economic unit."  
Hassan v. United States Postal Service
, 842 F.2d 260, 264 (11th Cir. 1988).  That perspective is especially logical here.  The financial interests of plaintiff and her husband are closely intertwined, if not actually blended into one set of interests.  Ordinarily, one spouse's expenses are really the expenses of the family unit, often paid for in marital funds and necessarily affecting the economic well being of both spouses (and their dependents, if any).  When one spouse accepts lower wages in return for employment based medical insurance, the other spouse equally accepts and lives with the consequences of that bargain. Given this simple economic reality, we cannot accept defendant's argument that the medical insurance payments here are an earned benefit for one spouse but merely a gratuity for the other.  Where either spouse is concerned, 
Peterson
 requires us to hold that the payments are from a collateral source and thus that the trial court may not credit them against defendant's liability.

We now proceed to the second reason that 
Peterson
 does not place this case outside of the collateral source rule.  In 
Peterson
, the plaintiff brought a common-law tort action for damages.  Here, plaintiff sues under the Dramshop Act to hold defendant to the liability that the statute specifically creates. This distinction is crucial.  Common-law tort law and the Dramshop Act have different purposes and achieve them by different means.  As 
Peterson
 states, the purpose of "compensatory tort damages" is to compensate.  
Peterson
, 76 Ill. 2d at 363.  Thus, courts ordinarily disfavor awarding tort plaintiffs damages in excess of actual losses, even if this refusal means lessening the punitive, retributive, or regulatory effect of the law on defendants. However, the Dramshop Act calls for different considerations.

The purposes of the Dramshop Act include far more than compensating those who are injured by intoxicated persons.  Indeed, given the low ceilings on recovery ($30,000 per person for injuries to persons or property and $40,000 per person for loss of means of support), compensation is scarcely even the leading goal of the act.  Rather, as our courts have long recognized, the Dramshop Act is primarily a police power regulation intended to protect the public by controlling the evils resulting from the liquor trade. 
Nelson v. Araiza
, 69 Ill. 2d 534, 538 (1978); 
O'Connor v. Rathje
, 368 Ill. 83, 86-87 (1937).  The act is designed to accomplish this regulatory purpose by placing the responsibility for damages caused by the abuse of alcohol on those who profit from its sale.  
Walter v. Carriage House Hotels, Ltd.
, 164 Ill. 2d 80, 86-87 (1995); 
Wessel v. Carmi Elks Home, Inc.
, 54 Ill. 2d 127, 132 (1973).  The idea behind the law is not merely to compensate the injured but to provide a constraint on those who dispense liquor to the public. 
Walter
, 164 Ill. 2d at 87; 
Scheff v. The Homestretch, Inc.
, 60 Ill. App. 3d 424, 427 (1978).  Thus, courts must recognize both that the act is penal and that it must be construed liberally to effectuate its goal of protecting the public.  
Walter
, 164 Ill. 2d at 87; 
Wessel
, 54 Ill. 2d at 131.

Because the Dramshop Act is intended to protect the public, control the liquor industry, and punish those who sell alcoholic beverages irresponsibly, courts have been reluctant to allow dramshop defendants to shift or mitigate their liability under the statute.  "Absent a clear legislative mandate to the contrary, the cost accruing for a violation of the statute should be borne by those profiting from the sale of liquor to the public ***."  
Wessel
, 54 Ill. 2d at 132.  Thus, an owner may not seek indemnification from the intoxicated person (
Wessel
, 54 Ill. 2d at 131-32) or exculpate itself by requiring customers to sign releases of liability (
Scheff
, 60 Ill. App. 3d at 428-29).

We believe that it would similarly be antithetical to the purposes of the act to allow a tavern owner to decrease its already limited liability by the amounts the injured party has obtained from her insurer.  Notably, although the legislature has amended the Dramshop Act numerous times and has restricted the scope of the collateral source rule in other areas (see 735 ILCS 5/2--1205 (West 1998)), it has declined to do so in Dramshop Act suits.  We decline to read such a limitation into the statute.  To do so would severely undercut the deterrent and punitive effects of the Dramshop Act.  Abrogating the collateral source rule in this context would mean that, in many cases, those who profit from the sale of intoxicating beverages would escape any liability at all for causing the harm the statute seeks to control.  Not only would injured parties lose the benefit of their bargains with third party insurers, but, as importantly, the general public would lose the regulatory benefit the legislature intended to confer on it.

We conclude that the collateral source rule allows plaintiff here to recover for her medical expenses even though her husband's insurance may have reimbursed her for the same expenses.  We recognize that this result may seem anomalous, in that a single family unit may recover twice for economic injury that resulted from the intoxicated (and in this case criminal) behavior of one of its members.  Nonetheless, in view of the clear intent behind the Dramshop Act, we believe that this result necessarily follows.  The legislature has specifically preserved a right of recovery by the spouse of an intoxicated person (see 235 ILCS 5/6--21 (West 1998)), and it is up to the legislature to place any limitations on that right.  The pre-
Peterson
 cases holding that the collateral source rule applies to dramshop suits are still good law.

The second ground on which defendant seeks to uphold the trial court's judgment requires little discussion.  Relying on cases such as 
Patton v. D. Rhodes, Ltd.
, 166 Ill. App. 3d 809 (1988), defendant argues that it is entitled to a setoff because there may be only one satisfaction for one injury.  However, 
Patton
 and similar cases involve payments by other defendants, not from collateral sources such as insurers.  See 
Tebo v. Havlik
, 311 N.W.2d 372, 373 (Mich. App. 1981), 
aff'd
, 343 N.W.2d 181 (Mich. 1984). The collateral source rule is an exception to the policy against double recovery, and defendant's invocation of cases such as 
Patterson
 amounts to a reassertion of its argument that the collateral source rule should not apply.  We have already rejected that argument.

The judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

INGLIS and McLAREN, JJ., concur.