STERLING RADIO STATIONS, INC., f/k/a Seith-Serafin Communications, Inc., f/k/a Great Lakes Network, Inc., *et al.*, Plaintiffs-Appellants, v. LESTER S. WEINSTINE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—99—2043

Opinion filed January 31, 2002.

Daniel S. Hefter and Todd Harold Fox, both of Hefter & Carroll, of Chicago, for appellant Alex R. Seith.

Joseph R. Marconi and David M. Macksey, both of Johnson & Bell, Ltd., of Chicago, for appellees Lester S. Weinstine and Weinstine, Shirk, Mellott & Leemon.

Robert C. Heist and John J. Simonetti, both of Bates & Carey, of Chicago, for appellees Robert L. Ellison and Klockau, McCarthy, Ellison & Marquis, P.C.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Alex R. Seith[1] appeals the trial court's grant of summary judgment to defendants Lester S. Weinstine, Robert L. Ellison, Weinstine, Shirk, Mellott & Leemon, and Klockau, McCarthy, Ellison & Marquis, P.C. (collectively, defendants), in this legal malpractice action. Seith contends that the trial court erred in finding that Seith suffered no damages as a matter of law and argues that his damages included: (1) $100,000 in attorney fees incurred in appealing the underlying suit in which the alleged legal malpractice occurred, and (2) $300,000 paid by a corporation in which he was a shareholder to satisfy the judgment entered against him in the underlying suit. For the reasons that follow, we affirm in part and reverse in part and remand for further proceedings.

On December 5, 1986, Sterling Radio Stations, Inc. (SRS), entered into an agreement to buy the WSDR radio station in Sterling, Illinois, from WSDR, Inc., and all of its individual shareholders. Pursuant to the purchase agreement, SRS executed a promissory note for the purchase of the radio station, which Seith, a shareholder of SRS, guaranteed. After making several payments on the note, SRS claimed that the WSDR sellers made misrepresentations, breached warranties, and violated restrictive covenants. SRS subsequently stopped making payments and defaulted on the promissory note. Seith also refused to pay on the note in his capacity as guarantor.

On March 13, 1992, the WSDR sellers filed suit in Whiteside County, Illinois (hereinafter, Whiteside action), against SRS and Seith, seeking payment on the promissory note and guaranty. On June 10, 1994, Seith and SRS hired defendants to defend them in the Whiteside Action.

The trial court found in favor of the WSDR sellers, finding SRS liable on the note and Seith liable on the guaranty. Judgment was entered against SRS and Seith, jointly and severally, in the amount of $778,460.38. Seith then hired new attorneys, Schopf & Weiss, and paid them approximately $100,000 to represent him in his unsuccessful appeal.

---

[1]Sterling Radio Stations, Inc., voluntarily dismissed its case below and is not a party to this appeal.

In August 1994, SRS transferred substantially all of its assets to LH&S Communications, Inc. (LH&S), through a series of transactions that involved the direct sale of some assets and the execution of a long-term lease for others. At the time of the transfers, Seith was the largest common shareholder of LH&S stock and also held over 3 million shares of LH&S's preferred stock.

In 1996, the WSDR sellers filed suit against SRS and LH&S (hereinafter, state court action), as a result of the transfers of SRS's assets to LH&S. On May 5, 1997, an involuntary petition under chapter 7 of the United States Bankruptcy Code was filed against SRS. 11 U.S.C. §§ 303, 701 et seq. (1994). Keith J. Shapiro, the trustee, acted as the chapter 7 trustee for SRS's estate. On May 21, 1997, the bankruptcy court entered an order for relief under chapter 7. In October 1997, LH&S entered into an agreement with two separate buyers to sell its assets for $3.25 million. On October 30, 1997, the WSDR sellers, with the trustee's support, obtained a temporary restraining order (TRO) in the state court action, which prevented LH&S from distributing any proceeds from the proposed sale of its assets.

The trustee contended that SRS was insolvent at the time of the transfer of its assets to LH&S. The trustee believed that he could pursue claims against LH&S for its alleged receipt of avoidable transfers. LH&S and Seith denied the trustee's contentions.

The parties agreed to settle their dispute in SRS's chapter 7 bankruptcy proceeding so that LH&S could proceed with its asset sale and distribute the proceeds. Seith and the other directors and shareholders of LH&S voted and agreed to a settlement agreement. The agreement provided that LH&S would pay $300,000 to the WSDR sellers in satisfaction of the $778,460.38 judgment owed by SRS and Seith, and $625,000 to the trustee to settle other debts. The TRO was then removed, and LH&S was allowed to consummate the sale of its assets.

On June 7, 1995, SRS and Seith filed suit against defendants, alleging legal malpractice in the underlying Whiteside action. In their verified complaint, SRS and Seith alleged that defendants failed to file pleadings which asserted any affirmative defenses or counterclaims, failed to take discovery, failed to investigate and assemble evidence as to the defenses and counterclaims, and failed to move to enforce a favorable settlement agreement reached prior to trial.

On November 13, 1998, the trial court entered summary judgment in favor of defendants. Seith filed a motion to vacate the entry of summary judgment, which was denied on April 29, 1999. Seith then filed this timely appeal.

Seith first argues that the trial court erred in granting summary

judgment when it held that he had suffered no damages as a result of the alleged legal malpractice. In response, defendants maintain that Seith, in his capacity as guarantor and a shareholder of SRS, lacks standing to bring this legal malpractice suit. Thus, we address both of these claims.

■ Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). Our review of summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

■ Illinois law is well settled that a shareholder seeking relief for an injury to the corporation, rather than a direct injury to the shareholder himself, must bring his or her suit derivatively on behalf of the corporation. *Small v. Sussman*, 306 Ill. App. 3d 639, 643, 713 N.E.2d 1216, 1219 (1999). However, an exception to this rule allows a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated. *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 733, 623 N.E.2d 907, 909 (1993), citing *Franchise Tax Board v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336, 107 L. Ed. 2d 696, 704, 110 S. Ct. 661, 665 (1990). Whether an action is derivative or direct, however, requires a strict focus on the nature of the alleged injury, *i.e.*, whether it is to the corporation or to the individual shareholder that injury has been done. *Small*, 306 Ill. App. 3d at 644, 713 N.E.2d at 1220.

■ Here, Seith, as guarantor of the promissory note, was personally liable in the Whiteside action. Seith hired defendant to represent both the corporation, SRS, and Seith individually. In this lawsuit, Seith is not suing defendants to recover damages for a harm done to SRS, but is instead seeking to recover for a harm done to him directly and, thus, has standing to bring this suit in his individual capacity. Accordingly, we reject defendants' argument.

Next, Seith contends that the $100,000 in attorney fees he incurred appealing the Whiteside action constitutes damages in this legal malpractice suit. Defendants disagree, contending that, because their alleged negligence did not compel or require Seith to pursue an appeal, he cannot use those fees as damages.

■ In order to prevail in a legal malpractice claim, a plaintiff must show: (1) the existence of an attorney-client relationship establishing a duty on the part of the attorney; (2) a negligent act or omission

constituting a breach of that duty; (3) proximate cause establishing that, "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351, 736 N.E.2d 145, 155 (2000). Actual damages are not presumed and, thus, the plaintiff must affirmatively plead and prove he suffered injuries resulting from the legal malpractice. *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 404, 752 N.E.2d 1232, 1238 (2001).

In *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 413 N.E.2d 47 (1980), the defendant attorney failed to file certain inheritance and estate tax forms and plaintiff was required to pay several thousand dollars in penalties and interest. Subsequently, the plaintiff spent $1,500 in attorney fees in unsuccessful attempts to obtain refunds of these charges. The *Sorenson* court held that a plaintiff could recover any losses directly caused by defendant's conduct, even if those losses were in the form of attorney fees. *Sorenson*, 90 Ill. App. 3d at 372, 413 N.E.2d at 51-52. Plaintiff sought the recovery of losses incurred in trying to obtain refunds of tax penalties assessed against her solely as a result of her attorney's negligence and, thus, those expenses were recoverable damages. *Sorenson*, 90 Ill. App. 3d at 372-74, 413 N.E.2d at 51-53.

■ Similarly, in this case, Seith incurred attorney fees in an unsuccessful attempt to avoid paying the judgment entered against him which was the direct result of defendants' negligence. Although Seith was not forced to appeal the Whiteside action, neither was the plaintiff in *Sorenson*. That plaintiff incurred attorney fees in an attempt to undo the damage done by a previous attorney, just as Seith has done here. Accordingly, the $100,000 Seith spent in attorney fees to appeal the Whiteside action should be considered damages, and we reverse the trial court's granting of summary judgment to defendants on this issue.

■ Seith also contends that he suffered $300,000 in damages when judgment was entered against him in the underlying suit. Although LH&S paid this judgment for Seith, Seith argues that this was actually his money because, as a LH&S shareholder, he was to receive between $900,000 and $1.2 million in a distribution from LH&S.

However, the evidence reveals that all of the directors and shareholders of LH&S, including Seith, entered into an agreement with the trustee on behalf of LH&S that LH&S would satisfy Seith's judgment in return for the removal of the TRO and the continuation of the sale of its assets. This $300,000 payment came out of the assets of the corporation, not the assets of the individual shareholders. Thus, Seith suffered only a diminution of the value of his shares and not a loss of his personal funds. Accordingly, we reject Seith's argument.

Alternatively, Seith urges us to apply the collateral source rule. Under that doctrine, he asserts, the fact that a collateral source, LH&S, satisfied Seith's judgment does not diminish the amount of damages Seith sustained from defendants' legal malpractice.

The collateral source rule holds that benefits received by the injured party from a source independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 215, 719 N.E.2d 366, 369 (1999). The rationale behind this rule is that a wrongdoer should not benefit from expenditures made by the injured party, or take advantage of contracts or other relations which exist between the injured party and third persons. *First Midwest Trust Co. v. Rogers*, 296 Ill. App. 3d 416, 432, 701 N.E.2d 1107, 1118 (1998). This principle has most often been applied in common law tort liability suits concerning insurance and disability benefits, but has also been utilized in dramshop and wrongful death actions. See *Muranyi*, 308 Ill. App. 3d at 215, 719 N.E.2d at 369.

Here, Seith asks us to apply the collateral source rule to a legal malpractice case, citing several cases from other jurisdictions. After reviewing Illinois law, particularly *Eastman v. Messner*, 188 Ill. 2d 404, 721 N.E.2d 1154 (1999), we decline to apply these out-of-state cases and find that the collateral source rule does not apply in this case.

The injuries resulting from legal malpractice are not personal injuries, but are pecuniary injuries to intangible property interests. *Eastman v. Messner*, 188 Ill. 2d 404, 411, 721 N.E.2d 1154, 1158 (1999). The legal malpractice action places the plaintiff in the same position he or she would have occupied but for the attorney's negligence. *Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C.*, 279 Ill. App. 3d 469, 478, 664 N.E.2d 1125, 1131 (1996). "The operative words are 'in the same position.' " *Bloome*, 279 Ill. App. 3d at 478, 664 N.E.2d at 1131. The plaintiff can be in no better position by bringing suit against the attorney than if the underlying action had been successfully prosecuted or defended. *Bloome*, 279 Ill. App. 3d at 478, 664 N.E.2d at 1131; *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525-26, 648 N.E.2d 285, 288 (1995).

Where an attorney is hired to defend an action that is lost by his or her malpractice, the damages in a malpractice action are the amount of the judgment against the defendant/malpractice plaintiff. *Gruse v. Belline*, 138 Ill. App. 3d 689, 698, 486 N.E.2d 398, 404 (1985). The legal malpractice plaintiff is entitled to recover only the property interest lost as a result of the alleged malpractice, an amount necessarily limited to the net amount paid by the plaintiff in the underlying action. *Eastman*, 188 Ill. 2d at 413, 721 N.E.2d at 1159.

Here, Seith personally paid nothing in satisfaction of the judgment rendered against him and SRS as a result of defendants' malpractice. Therefore, his measure of damages is zero. To allow Seith to recover $300,000 in this malpractice claim would unjustly enrich Seith and permit a double recovery. Further, Seith would be in a better position by bringing the legal malpractice claim than if he had won the underlying action. We do not believe this result is allowed under Illinois law as our supreme court held in *Eastman* and, thus, affirm the trial court's grant of summary judgment on this issue to defendants.

For the foregoing reasons, the decision of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GREIMAN, J., concurs.

JUSTICE REID, dissenting:

I respectfully dissent. The collateral source rule is applicable to this set of facts.

*Eastman v. Messner*, 188 Ill. 2d 404 (1999), is distinguishable on its facts. In *Eastman* an employee was injured while working on a third party's premises. The employee's employer paid worker's compensation benefits to the employee. The employee subsequently filed suit against the third-party tortfeasor. However, the employee's attorneys failed to file the personal injury action within the applicable limitations period, and the employee subsequently brought a legal malpractice action against the attorneys. The issue considered in *Eastman* was whether the employer could assert a lien against the employee's recovery in the legal malpractice action. The *Eastman* court was not considering whether or not the collateral source rule should be applied to its set of facts.

In giving a general overview of the law as it concerns legal malpractice, the *Eastman* court wrote:

"The injuries resulting from legal malpractice are not personal injuries but, instead, are pecuniary injuries to intangible property interests. [Citation.] The plaintiff must affirmatively prove that he suffered actual damages as a result of the attorney's malpractice [citation], and a plaintiff who obtains recovery in a malpractice suit can be 'in no better position by bringing suit against the attorney than if the underlying action against the third-party tortfeasor had been successfully prosecuted' [citation]." *Eastman*, 188 Ill. 2d at 411-12.

Relying on *Eastman*, the majority maintains that Seith's measure of damages on the third-party payment of the judgment against him is zero because he did not *personally* pay the judgment rendered against him, and that to allow Seith to recover would unjustly enrich Seith and permit a double recovery. I disagree.

Here, we have a situation where two legal theories have collided and it is our decision to choose which path to take. In my view, the policy considerations behind why the collateral source rule was developed dictate that it should be applied in this case.

The collateral source rule is generally applicable to tort liability. *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 215 (1999). This is an action in tort, and under the collateral source rule, "benefits received by an injured party from a source wholly independent of, and collateral to, a tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *First Midwest Trust Co. v. Rogers*, 296 Ill. App. 3d 416, 432 (1998), citing *Wilson v. Hoffman Group, Inc.*, 131 Ill. 2d 308, 320-21 (1989); *Bernier v. Burris*, 113 Ill. 2d 219, 242 (1986). "The rationale for the collateral source rule is that a *wrongdoer should not benefit* from expenditures made by the injured party, or take advantage of contracts or *other relations* which exist between the injured party and third persons." (Emphasis added.) *First Midwest Trust Co. v. Rogers*, 296 Ill. App. 3d 416, 432 (1998); *Wilson*, 131 Ill. 2d at 320. "Although *injured parties may receive a windfall* from the collateral source rule, it is usually considered more just for an injured party to receive the windfall than for a wrongdoer to be relieved of full responsibility for his wrongdoing." (Emphasis added.) *First Midwest*, 296 Ill. App. 3d at 432-33, citing *Wilson*, 131 Ill. 2d at 321-22.

Here, all of the elements for the collateral source rule are met. It is undisputed that the appellees represented Seith in the Whiteside action, and that as a result of that judgment, Seith was held jointly and severally liable for $778,460.38. Seith alleges that the appellee's negligence was the cause of the judgment against him. LH&S, a third party, who was not liable under the Whiteside action judgment, settled the judgment on Seith's behalf for $300,000. LH&S and Seith held a special relationship which led LH&S to settle the Whiteside action. The type of relationship which LH&S and Seith held is immaterial under the collateral source rule.

Under the collateral source rule benefits received by the injured party from a source independent of and collateral to the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. As such, Seith's damages should not be diminished because LH&S paid the Whiteside action judgment.

The majority's position ignores the policy considerations behind

the development of the collateral source rule. Seith should be allowed to include the $300,000 in his special damages at trial. If the appellees are found to have acted negligently at trial, they will benefit from LH&S satisfying the judgment in the Whiteside action. The majority's ruling allows the alleged wrongdoers, the appellees, to potentially be relieved of the full responsibility for their wrongdoing. This is exactly why the collateral source rule was developed, to prevent a tortfeasor from benefitting from the special relationship an injured party has with a third party.

Accordingly, I would reverse the trial court and direct it to include the $300,000 payment of the judgment as part of Seith's special damages. Therefore, I respectfully dissent.